IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GRAND RIVER ENTERPRISES SIX
NATIONS LTD.,

|                          | Plaintiff, | OPINION & ORDER |
|--------------------------|------------|-----------------|

v.

                                                        13-cv-104-wmc

VMR PRODUCTS LLC d/b/a
V2CIGS,

                          Defendant.

In this civil action, plaintiff Grand River Enterprises Six Nations, Ltd. ("Grand River") states various claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and common law against defendant VMR Products LLC ("VMR"), all arising out of its production and sale of products bearing the VAPOR COUTURE trademark. VMR has moved to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). (Dkt. #15.) The court concludes: (1) VMR is subject to personal jurisdiction in the Western District of Wisconsin; and (2) VMR has established neither that the convenience of the parties and witnesses, nor that the interests of justice warrant transfer. The court will, therefore, deny VMR's motion to dismiss or transfer.[1]

_____

[1] Also before the court is plaintiff Grand River's motion for leave to file a sur-reply (dkt. #28), which the court will deny as moot in light of its decision denying defendant's motion to dismiss.

ALLEGATIONS OF FACT

Plaintiff Grand River is a Canadian limited liability company based in Ohsweken, Ontario.  (Compl. (dkt. #1) ¶ 2.)  Grand River is a cigarette manufacturer and sells sundry tobacco products, including cigarettes, to importers, who in turn sell and distribute those products throughout the United States.  (*Id*.)  Grand River owns a federal trademark registration and a trademark application for the COUTURE trademark for use in connection with cigarettes and smoking accessories.  (*Id*. at ¶ 3.)

Defendant VMR is a Florida limited liability company with its headquarters in Miami, Florida.  (*Id*. at ¶ 1.)  VMR designs, manufactures, and distributes electronic cigarettes and associated accessories.  (Def.'s Mot. (dkt. #15) 3.)[2]  VMR sells its products over the internet and through retail stores.  Grand River has produced documents showing internet sales for the alleged infringing products from July 2012 through December 2012.  (Burkland Decl., Ex. A (dkt. #22-1).)  These documents also show that VMR sold these same products across the United States, including 38 internet sales shipped to 23 different customers in Wisconsin.  (*Id*.; Pl.'s Resp. (dkt. #20) 3.)  In addition to internet sales, VMR alleges that infringing products were available for sale over the counter in Hudson, Cottage Grove, and New Berlin, Wisconsin.  (Burkland Decl., Ex. B (dkt. #22-2); Pl.'s Resp. (dkt. #20) 3.)

---

[2] "[I]n deciding whether a party has made the necessary showing of personal jurisdiction, a court may rely on the allegations of the complaint and also may receive and weigh affidavits submitted by the parties." *Bolte v. Koscove*, No. 04-C-935-C, 2005 WL 396609, at *1 (W.D. Wis. Feb. 16, 2005) (citing *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

OPINION

## I. Personal Jurisdiction

"[F]ederal personal jurisdiction is proper whenever the person would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test." *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). Therefore, the defendant here is subject to personal jurisdiction in this district if it is subject to jurisdiction under Wisconsin's long-arm statute and the exercise of jurisdiction comports with federal due process. *Id.* at 779. Because Wisconsin's long-arm statute, Wis. Stat. § 801.05, has been interpreted to confer jurisdiction to the fullest extent allowed under the due process clause, this court need only focus on the question of whether the court's exercise of specific personal jurisdiction over VMR comports with the requirements of federal due process. *Felland v. Clifton*, 682 F. 3d 665, 678 (7th Cir. 2012).

Plaintiffs bear the burden of demonstrating the existence of personal jurisdiction, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997), but need only make a prima facie showing when a defendant's motion to dismiss relies on the submission of written materials without the benefit of an evidentiary hearing. *Purdue Research Found. v. Sanofi-Synthelabo, S.A*, 338 F.3d 773, 782 (7th Cir. 2003). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal quotation marks and citation omitted).

3

The key constitutional question here is whether VMR had sufficient "minimum contacts" with Wisconsin such that the maintenance of this suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *see also Illinois v. Hemi Group, LLC*, 622 F.3d 754, 757 (7th Cir. 2010) (quoting *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008)). The court considers whether "the defendant should reasonably anticipate being haled into court in the forum state, because the defendant has purposefully availed itself of the privilege of conducting activities there." *Kinslow*, 538 F.3d at 691. Grand River limits its assertion of personal jurisdiction to specific, rather than general, personal jurisdiction. (Pl.'s Resp. (dkt. #20) 4.) *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) ("It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant."). As explained below, VMR's numerous, repetitive and specific online sales to Wisconsin customers are sufficient to warrant this court's exercise of personal jurisdiction over VMR on Grand River's claim.

### A. VMR's Contacts with Wisconsin

The Court of Appeals for the Seventh Circuit has stressed the care required to resolve questions about personal jurisdiction involving online contacts. *See Hemi Group*, 622 F.3d at 760. Specifically, the Seventh Circuit cautions that personal jurisdiction does not lie simply because a defendant operates an interactive, or even highly

interactive, website accessible from the forum state.  *Id*.; *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011).  Rather, the defendant must in some way *target* and *exploit* the forum state's market.  *be2 LLC*, 642 F.3d at 558 ("Our inquiry boils down to [has the defendant] purposely exploited the [forum] market?"); *Hemi Group*, 622 F.3d at 758; *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427-29 (7th Cir. 2010).

VMR disputes the existence of personal jurisdiction here because it "has *not targeted* Wisconsin in any way."  (Def.'s Mot. (dkt. #15) 6; Def.'s Reply (dkt. #26) 4.)  Instead, VMR asserts that its "contacts with Wisconsin were incidental, at best," and that VMR had not "secured sufficient customers or generated the amount of revenues such that it would [have] anticipate[d] being haled into court in Wisconsin."  (Def.'s Mot. (dkt. #15) 6.)

In this respect, VMR likens its conduct to that of the defendant's in *be2 LLC*, where the Seventh Circuit found a lack of personal jurisdiction in the State of Illinois over an interactive website, which allowed users to register dating profiles.  (*Id*.)  In *be2 LLC*, however, the website in dispute was a *free* dating website.  642 F.3d at 559.  The only contact with the forum state the plaintiff was able to show in that case was 20 users who registered for the free service and supplied an Illinois address.  *Id*.  Aside from the fact that there was no proof that the 20 users actually resided in Illinois, the Seventh Circuit stressed the lack of evidence that the defendant interacted in any way with the users.  *Id*. ("We do not see evidence of any interactions between [plaintiff] and the be2.net members.").  Because of this lack of interaction, the Court of Appeals compared the contact to a user simply accessing a website, albeit a highly interactive one.  *Id*.

Combined with the fact that the site was free, the Seventh Circuit found the lack of any user-defendant interaction meant that *be2 LLC* neither exploited nor targeted their users.

In contrast, VMR did much more than run a free, interactive website accessed by Wisconsin citizens.   VMR purposefully targeted and exploited the Wisconsin marketplace by engaging in a pattern of repeated commercial sales with customers in this state.   *Genetic Techs., Ltd. v. Interleukin Genetics, Inc.*, No. 10-cv-69-bbc, 2010 WL 3122304, at *3 (W.D. Wis. Aug. 9, 2010) ("When a company solicits a state's residents to buy its products, it is specifically targeting that state and receiving benefits from it."). By engaging in repeat sales with Wisconsin customers, VMR not only interacted with them on its website, but physically shipped products to them in Wisconsin.  *uBid*, 623 F.3d at 428-29 (explaining that a defendant cannot shed customer-defendant interaction simply by creating an online commercial process that does not require human action on the part of the defendant); *see also Hemi Group*, 622 F.3d at 758.

Still, VMR argues that its mere 38 sales in Wisconsin compare favorably to the 20 users in *be2 LLC* which were found insufficient to constitute purposeful targeting or exploitation of the forum to establish personal jurisdiction in Illinois, as compared to the hundreds of thousands of customers and millions of dollars in revenue in *uBid,* which did result in a finding of personal jurisdiction.  (Def.'s Reply (dkt. #26) 4-6.)  While VMR's exploitation of the forum's market did not reach the level seen in *uBid*, the nature of VMR's contacts is significantly more similar to *uBid* than *be2 LLC*.  Though there may be a situation in which a greater quantity of contacts may be required (for example, if general personal jurisdiction were asserted), the quality of the specific contacts here --

6

repeated commercial sales, including into locations in this state in which the defendant's products compete, or at least potentially complete, with plaintiff's products -- is determinative. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (explaining so long as it creates a "substantial connection" with forum state, even a single act can support jurisdiction); *Snyder v. Smith*, 736 F.2d 409, 416 (7th Cir. 1984) (holding that a single act may be sufficient to confer jurisdiction as long as cause of action arises from that act).

Even if VMR's online sales were not sufficient to satisfy due process, Grand River contends that this court has personal jurisdiction because VMR also sold electronic cigarettes in at least three retail locations in Wisconsin.  (Pl.'s Resp. (dkt. #20) 7.) Relegating its response to a single footnote, VMR neither denies that it actively offers products for sale at physical locations in Wisconsin, nor that its sale representatives guide potential customers to the physical locations.  Instead, VMR emphasizes that the VMR sales representative expressed some uncertainty when providing Grand River's attorney with the locations of the retail sites.  At most, this response leaves uncertain on this current record the physical retail locations, if any, within this State and to what extent VMR is involved, but the court must resolve the factual disputes in plaintiff's favor for purposes of determining personal jurisdiction. *Purdue,* 338 F.3d at 782. ("[T]he plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.").  As a result, Grand River has also proffered sufficient evidence of VMR's minimum contacts through sales in multiple, physical locations in Wisconsin and its sales representatives' targeting of potential Wisconsin customers by directing them to those

locations.  *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987) (holding that the establishment of channels for forum customer advice, or marketing a product through a distributor who has agreed to serve as the sales agent in the forum state, is sufficient contact under stream of commerce personal jurisdiction).

### B.  The Relationship Between VMR's Contact and Grand River's Claim

In addition to finding purposeful minimum contacts with Wisconsin, Grand River's claims against VMR must also "arise out of or relate to" those contacts.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73; *uBid*, 623 F.3d at 429.  This "relatedness" element of *specific* jurisdiction is intended to provide defendants with the predictability that their contact with a forum in one context will not make them liable to suit in an entirely different context in the past, or into the future, as the existence of general personal jurisdiction might.  *RAR*, 107 F.3d at 1277.

In considering the nexus between the contact and the claim, the Seventh Circuit has avoided a mechanical test in favor of a more pragmatic focus on the "tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *uBid*, 623 F.3d at 430 (quoting *O'Conner v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007)).  Under this view, when a defendant avails itself of the benefits and protections of doing business in Wisconsin, it does so in exchange for submitting to jurisdiction in Wisconsin for claims arising from or related to those activities -- thus making those claims foreseeable. The court explained, "the precise causal relationship between contacts and claim [is] not important," so long as the reciprocal relationship between the contact and claim makes

8

jurisdiction in the state foreseeable.  *uBid*, 623 F.3d at 430.

As already discussed, VMR's purposeful contact arises out of its sale of VAPOR COUTURE products through the internet and retail locations to Wisconsin customers. Now Grand River brings claims of trademark infringement, alleging that VMR's use of the VAPOR COUTURE mark is "likely to cause confusion, mistake, or deception as to the source, origin, affiliation, connection, or association of VMR's products with Grand River." (Compl. (dkt. #1) 6-7.)  As such, it is reasonable to conclude the benefit VMR received through the sale of its products to Wisconsin customers by allegedly using Grand River's trademark was done in exchange for submitting itself to claims related to those products, including claims alleging the products infringed on a competitor's trademark.  *Cf. Hemi Group*, 622 F.3d at 759 (finding relatedness between defendant's online sale of cigarettes to Illinois customers and the plaintiff's claim that defendant failed to report the sales to the proper Illinois authority).

### C. Fairness

Finally, jurisdiction over VMR is only proper if exercising jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316; *Hemi Group*, 622 F.3d at 759.  This inquiry focuses on:  the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in efficiently resolving controversies; and the shared interest of the states in furthering fundamental substantive social policies.  *Burger King*, 471 U.S. at 477 (quoting *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The burden of persuasion on the fairness issue falls on the defendant to show that jurisdiction would not be proper. *Burger King,* 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable."). Here, VMR simply makes a conclusory statement insisting a finding of personal jurisdiction would offend fair play and substantial justice, which is a far cry from a "compelling case." (Def.'s Mot. (dkt. #15) 6-7; Def.'s Reply (dkt. #26) 6-7.)[3] Thus, the court concludes that VMR has also not met its burden of demonstrating that this court's exercise of personal jurisdiction over VMR offends the notions of fair play and substantial justice.

By making numerous and repeated sales to Wisconsin customers over the internet and at retail locations in the state, VMR opened itself to claims arising out of and related to those sales, and should have reasonably anticipated being haled into court in Wisconsin for this purpose.

---

[3] The result is the same even if the court were to consider VMR's arguments in support of a transfer in venue. *See Hemi Group*, 622 F.3d at 760 ("'These [fair play and substantial justice] factors rarely will justify a determination against personal jurisdiction' because there are other mechanisms available to the court—such as choice of law and transfer of venue—to accommodate the various interests at play.") (quoting *Purdue,* 338 F.3d at 781 n.10). As explained below, the court did not find the reasons justified transfer and certainly do not present a "compelling case" that exercising jurisdiction would be unreasonable.

## II. Transfer of Venue under § 1404(a)

Under 28 U.S.C. § 1404(a), a district court with proper venue may "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996).  When deciding whether to grant a motion to transfer a case to another district, the court must consider whether, under the specific circumstances of the case, transfer would:  (a) be for the convenience of the parties and witnesses; and (b) promote the interests of justice.  *Id*.  The burden rests on the moving party, here VMR, to establish "that the transferee forum is clearly more convenient."  *Coffey*, 796 F. 2d at 219-20.

### A. Convenience

When determining whether a transferee forum is clearly more convenient the court should first analyze:  "(1) the plaintiff's choice of forum; (2) the convenience to parties; [and] (3) the convenience to witnesses."  *Illumina, Inc. v. Affymetrix Inc.*, No. 09-CV-277-BBC, 2009 WL 3062786, at *2 (W.D. Wis. Sept. 21, 2009).  Despite the fact that the Western District of Wisconsin is not Grand River's home forum, nor is it the location of the evidence or witnesses relevant to the case, VMR has not demonstrated that the Southern District of Florida is clearly a *more* convenient forum.

#### i.   Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally given deference because of its

11

convenience to him.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).  When

the plaintiff's choice of forum is not its home forum, as in this case, the choice is to be

given equal weight with the other factors considered by the court.  *Symbol Techs., Inc. v.*

*Intermec Techs. Corp.*, No. 05-C-256-C, 2005 WL 1657091, at *3 (W.D. Wis. July 14,

2005).

Here, Grand River is a Canadian business.  (Pl.'s Resp. (dkt. #20) 2.)  Grand

River claims to have chosen the Western District of Wisconsin "based on its dealings

with Wisconsin, familiarity with the forum, . . . for the convenience of employees of

Grand River in the event this matter proceeds to trial," for the court's "famously speedy

docket, its familiarity with intellectual property cases, and the fact that it was a relatively

neutral forum for both parties."  (*Id*. at 11-12.)  VMR argues that because Grand River is

a foreign plaintiff, and litigating in any forum in the United States will involve

international travel for Grand River, Grand River's choice of forum deserves "little, if

any, deference from this Court."  (Def.'s Mot. (dkt. #15) 8-9.)

Even when a plaintiff is not litigating in his home forum, however, his choice of

forum will not be disturbed unless the transfer factors strongly favor the defendant.  *In re*

*Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003); *see also Chi. Rock Island &*

*Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir. 1955) ("[T]he District Court should

bear in mind that in filing an action the plaintiff is permitted to choose any proper forum

and that the plaintiff's choice of forum should not be lightly set aside.").  Therefore,

while the court weighs Grand River's choice of forum equally with the other transfer

factors, VMR must still show a change in the status quo is appropriate.

ii.   **Convenience of the Parties**

When determining the convenience of a particular forum to the parties, the court will take into consideration the location of the sources of proof. *Illumina*, 2009 WL 3062786 at *3; *e2Interactive, Inc. v. Blackhawk Network, Inc.*, No. 09-CV-629-SLC, 2010 WL 3937911, *3 (W.D. Wis. Oct. 6, 2010). Sources of proof may include the allegedly infringing products and any documents the parties view as informative to the litigation. *In re Affymetrix, Inc.*, Misc. No. 913, 2010 WL 1525010 at *2 (Fed. Cir. Apr. 13, 2010).

VMR argues that this factor weighs heavily in favor of transfer because (1) litigating this action in Wisconsin would be very inconvenient and (2) transfer to the Southern District of Florida would be significantly more convenient or, at worst, just as convenient as this forum for Grand River. Defendant cites the location of its business records, technical documents, and physical product in support of its convenience claims. This court is unconvinced VMR satisfied its burden of "clearly more convenient" in regard to any of these claims.

In support of its motion, VMR also claims a transfer to the Southern District of Florida would be more convenient because the litigation will likely involve "the production of a substantial number of VMR's corporate documents" and "business records and technical documents," which are all located in Miami, Florida. (Def.'s Mot. (dkt. #15) 10-11.) Additionally, VMR claims that litigation will involve the physical inspection of VMR's actual products bearing the trademark. (*Id.*) Even if that is all true, both the Seventh Circuit and this court have recognized that technological advancements have all but eliminated the importance of the location of documents and other sources of

13

proof in § 1404(a) transfer analysis. *Bd. of Trs., Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas."); *Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005) ("[T]echnological advancements have diminished traditional concerns related to ease of access to sources of proof."); *Illumina*, 2009 WL 3062786 at \*3  (finding even the transport of a 300-pound genetics machine was "a neutral factor").

VMR even argues that the Southern District of Florida is a more convenient forum for *Grand River*, pointing out that Grand River would save both time and money flying to Florida from Canada rather than Madison.  (Def.'s Reply (dkt. #26) 8-9.) Whatever merit there may be in these observations, it is difficult to give much weight to a defendant's claimed concern for the inconvenience of its opponent.  This court has previously held that a "plaintiff is free to emphasize other factors over her own conveniences." *Gibson v. Unum Life Ins. Co. of Am.*, No. 10-CV-246-BBC, 2010 WL 3244901, at \*2 (W.D. Wis. Aug. 16, 2010).  On this record at least, VMR has failed to demonstrate that convenience to the parties tips the balance of factors sufficiently, if at all, to warrant transfer.

iii.   **Convenience of the Witnesses**

When analyzing the convenience factors to determine whether a proposed transferee district is clearly more convenient, the court may also take into consideration

14

the convenience of both party and non-party witnesses.  However, the defendant again bears the burden to "'clearly specify the key witnesses to be called' and submit 'affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony.'" *Gibson*, 2010 WL 3244901 at *2 (quoting *Generac Corp. v. Omni Energy Sys., Inc.*, 19 F. Supp. 2d 917, 923 (E.D. Wis. 1998)).  While VMR has identified several witnesses they may call, they provide little more than a brief general comment to establish the subject or relevancy of their testimony for all but one of the witnesses.[4]

The majority of the witnesses identified by VMR are also employees and, therefore, within the control of VMR and available for testimony regardless of the location of the litigation.  *Illumina*, 2009 WL 3062786 at *3 ("The location of the defendant's employee witnesses is not a heavily weighted factor because of the assumption that 'witnesses within the control of the party calling them, such as employees, will appear voluntarily,' that is, at least without subpoena.") (citations omitted).  As with convenience to parties, technological advances have diminished the significance of the cost of transporting witnesses to a particular forum.  *Illumina*, 2009

---

[4] In its motion to dismiss, VMR merely states the litigation of Grand River's claims "will require testimony from VMR's current and former employees who have business knowledge of the VAPOR COUTURE trademark and related goods."  (Def.'s Mot. (dkt. #15) 10); *see also* Def.'s Reply (dkt. #26) 10 ("VMR named four (4) witnesses residing in Miami, Florida, as well as individuals residing in Canada.").); Def.'s Reply, Ex. 2 (dkt. #26-2) 3 ("[The witness] has knowledge of uses of the phrase 'VAPOR COUTURE' and the term 'vapor' in commerce and the electronic cigarette industry.").)  VMR does not articulate any clear need, or even intention, to call these individuals as live, in person witnesses at trial, as opposed to appearing by video conference or deposition, if at all. Rather, all of these individuals are just listed as having discoverable information.

WL 3062786 at *3.

Finally, neither VMR nor Grand River have identified any third-party witnesses. Even if they had, in person testimony plays a less important role in patent and trademark litigation, where "depositions are customary and are satisfactory as a substitute for technical issues," and live video conferencing has become more common. *Adams v. Newell Rubbermaid Inc.*, No. 07-C-313-S, 2007 WL 5613420, at *3 (W.D. Wis. Aug. 21, 2007); *Illumina*, 2009 WL 3062786 at *3.

While the proposed transferee district would be more convenient for those few witnesses VMR names that live in the district, the Southern District of Florida is not "clearly more convenient" for all the witnesses named by the parties.   Nor is VMR's proposed cost and time of travel a legitimate argument, when some witnesses will have to travel regardless and transferring the case would result in a delay and increased litigation costs. *Illumina*, 2009 WL 3062786 at *6 ("[T]here is no evidence that the greater travel or transfer costs would not be canceled out by the money saved by reaching the end of the litigation 18 months sooner than if this case were litigated in the Northern District of California.").   As a result, VMR has failed to demonstrate that the Southern District of Florida is a "clearly more convenient forum."

**B.  Interests of Justice**

"The 'interests of justice' is a separate component of a §1404(a) transfer analysis," which may be determinative and demand a decision contrary to analysis of the convenience factors. *Coffey*, 796 F.2d at 220.   Traditionally, this analysis relates to the

"efficient administration of the court system," with courts considering such factors as: (1) the district in which the litigants would receive a speedier trial; (2) whether there is related litigation in the transferee district that may allow consolidation; (3) the courts' relative familiarity with the applicable law; and (4) the relation of each community to the controversy at issue.  *Id.* at 221; *Illumina*, 2009 WL 3062786 at *5; *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

Neither party questions the court's familiarity with federal trademark law, nor does either party raise duplicative litigation as an issue.  While VMR cites to the relative speed of each court, it ultimately acknowledges the "forums are comparable" with regard to the speed of their respective dockets.  (Def.'s Reply (dkt. #26) 15.)[5]  Thus, VMR rests its argument on the relation of each district to the controversy at issue.  VMR argues that because it is a Florida company with its headquarters in South Florida, and because it designs the disputed product in Florida, the Southern District of Florida has a stronger relationship with the controversy at issue.  (Def.'s Reply (dkt. #26) 14-15.)

An essential element of any trademark infringement claim is the potential effect the alleged infringement will have on consumers.  *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002) ("[Plaintiff] must establish that . . . [defendant's] use of the term is likely to cause confusion among consumers.").  Here, Grand River addresses

---

[5] While the relative docket speeds of the Western District of Wisconsin and the Southern District of Florida from filing to trial are relatively equivalent (Burkland Decl., Ex. D (dkt. #22-4)), the trial date for this case is in roughly six and a half months (Order (dkt. #19) 5).  A transfer to the Southern District of Florida raises the potential for delay in rescheduling deadlines and a trial date.  *e2Interactive*, 2010 WL 3937911, *11 ("[Even if a transferee court considers events to date, there is] no reason to believe that the judge would be willing or able to bump this case to trial on a faster track.").

17

this element by focusing on VMR's sales to repeat Wisconsin customers over the internet and through physical locations in Wisconsin.   (Def. Reply (dkt. #26) 15 ("[The] relationship that the Western District of Wisconsin has with this controversy would be to protect Wisconsin consumers from potential confusion between the two marks at issue here.")).

While the "interests of justice" gives some weight to the location of the design of the disputed product, this case will likely turn on the effect of the product on potential consumers.   This court is unconvinced that the Southern District of Florida is considerably more attached to this controversy than is the Western District of Wisconsin or other federal forums where customers have made purchases of the allegedly offending products.   *See Toy Biz v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998) (holding that, in an action for trademark infringement and unfair competition, the initial forum was the locus of operative facts because the allegedly infringing model rockets were sold in the initial forum, regardless of the fact that defendant manufactured the allegedly infringing product in the transferee forum).

Considering all of the factors of a § 1404(a) transfer analysis, the court finds VMR has not met its burden of establishing that the Southern District of Florida is clearly more convenient, nor that the interests of justice warrant transfer.

ORDER

IT IS ORDERED that:

1) defendant VMR Products LLC's motion to dismiss or, in the alternative, transfer to the United States District Court for the Southern District of Florida (dkt. #15) is DENIED; and

2) plaintiff Grand River Enterprises Six Nations Ltd.'s motion for leave to file a sur-reply (dkt. #28) is DENIED as moot.

Entered this 26th day of November, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge