IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
─────────────────────────────────────────────────────────

GRAND RIVER ENTERPRISES SIX
NATIONS LTD.,

                      Plaintiff,                                   ORDER

     v.

                                                               13-cv-104-wmc

VMR PRODUCTS LLC, d/b/a V2 CIGS,

                      Defendant.
─────────────────────────────────────────────────────────

With respect to the parties' various motions in limine, the court rules as follows:

I.       Plaintiff's Motions in Limine

        A.  **Preclude Defendant from Challenging Federal Trademark Registration Presumptions (dkt. #151)**

Grand River first moves to preclude VMR from directly or indirectly challenging the validity of the COUTURE registration for cigarettes, Grand River's ownership of the COUTURE registration or Grand River's exclusive rights in the COUTURE mark. As noted in the court's summary judgment opinion, the principal register demonstrates that Grand River owns U.S. Reg. No. 3,729,797, which is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a). That presumption shifts the burden of production to the defendant. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986). Here, VMR introduced no evidence at summary judgment that the COUTURE mark was invalid as descriptive or that Grand River did not own or have exclusive rights in the mark.

VMR responds that: (1) the COUTURE mark is descriptive, because it describes the "fashionable" and "upscale" quality of the cigarettes; and (2) Grand River neither owns nor has exclusive rights in the mark because it does not use the mark in commerce. The court rejected the latter argument on summary judgment. As for the former argument, VMR should have raised it in opposing Grand River's motion for summary judgment, when it was on notice to come forward with *all* evidence and arguments necessary to defeat that motion. This is just as true for VMR's attempt, in its letter of June 4, 2012, to raise an allegedly incorrect first use date as a defense to the enforceability of the mark. Although VMR points to a March 28, 2014 deposition of Lake Erie Tobacco as the first time it learned of the later first use date, it did not argue at summary judgment that it required additional time pursuant to Fed. R. Civ. P. 56(d). Nor did it timely notify the court of this discovery, once made, nor did it raise first use in responding to this motion in limine. Raising it by letter the day before the final pretrial conference is simply too late. The court having entered summary judgment with respect to whether Grand River has a protectable mark, this motion in limine is GRANTED.

B.  Exclude Evidence of Other Proceedings (dkt. #153)

Grand River next asks the court to prohibit VMR from offering evidence from other proceedings, including the NAFTA proceedings, the New York tax case, the state cases in which Grand River contested personal jurisdiction, and a 2002 New York case in which Grand River sued various attorneys general for violation of the commerce clause and Sherman Act. As the court found on summary judgment, and Grand River argues: (1) those other proceedings are irrelevant; (2) even if they are relevant, their limited probative value is substantially outweighed by their prejudicial value, since Grand River would be forced to litigate "mini-trials" concerning each proceeding and would have to combat allegations of tax evasion with respect to the New

2

York tax case; and (3) the judicial estoppel arguments are equitable and should not come before a jury.

VMR argues that it should be free to introduce evidence to show that, as a factual matter, Grand River never used the COUTURE mark in commerce. Because the court has already rejected VMR's position, found that Grand River has a protectable mark and declined to apply judicial estoppel, however, the court agrees with Grand River that evidence of these other proceedings is not relevant to the issue remaining in the case -- the likelihood of confusion. Accordingly, this motion is GRANTED, although nothing in this ruling is intended to preclude admission of particular statements by a party opponent during these other proceedings, to the extent they are relevant to the remaining issues of likelihood of confusion or damages.

### C.   Exclude Defendant's Expert Jeffrey M. Samuels (dkt. #155)

Finally, Grand River asks to exclude the testimony of VMR's expert, Jeffrey M. Samuels, on the basis that Samuels' testimony is improper legal opinion on the issue of "use" in U.S. commerce and that, even if it is not, it is unreliable under *Daubert*. VMR responds that Samuels' testimony regarding use in commerce is not a legal opinion but instead seeks to opine on the facts of Grand River's use of the COUTURE mark and whether they establish enforceable rights. In the alternative, VMR asks that Samuels be permitted to testify regarding any opinions and conclusions the court *does* deem permissible. In light of the court's ruling on summary judgment, however, none of the issues to which Samuels was going to testify remain at issue in this case. Therefore, without regard to the merits of the motion to exclude his testimony, that motion is GRANTED.

## II.   Defendant's Motions in Limine

### A.  Authenticate and Admit COUTURE Trademark Report (dkt. #139)

VMR first asks the court to authenticate and admit under Federal Rule of Evidence 803(6) its search report for the trademark COUTURE, which it commissioned after Grand River initiated this litigation. On November 27, 2013, a representative from VMR's counsel requested a trademark search from Thomson CompuMark, a trademark research firm. The search spanned five databases consisting of public information and federal and state records. The Report identified 1,893 marks either registered with the USPTO or with applications pending; 254 marks registered or pending on state registers; 30 uses in web domain names; and 155 instances of common law usage. Thomson's databases are maintained and updated as a regular business activity, and Thomson's regular business activities include fairly and accurately reporting the results of those database searches. VMR has included a declaration from Scott McKay, a Manager of Quality Assurance at Thomson indicating that preparing such reports occurs within Thomson's ordinary custom and practice.

Grand River responds that the report is inadmissible as hearsay and that it is not probative of third-party use in any event. *See Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1113 (N.D. Cal. 2008) ("When a search report is offered to prove what the report asserts, i.e. that a mark has been registered and that it is in commercial use, this is classic inadmissible hearsay."); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, at § 11:88 ("[I]t is well settled that a trademark search report does not constitute evidence of either the existence of a registration or of the use of a mark.").

The court agrees that the search report does not fit under the rubric of FRE 803(6), since it is not "[a] record of an act, event, condition, opinion, or diagnosis." On the contrary, this is a report prepared for, or at least in anticipation of, litigation. Even the cases VMR cites do not indicate that *search reports themselves* are frequently admitted into evidence, though *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88 (4th Cir. 1997), for instance, suggests that

4

evidence of marks *on the trademark register* may be admissible and probative for the purposes of showing that a mark is weak, and *First Savings Bank, FSB v. First Bank Sys.*, 101 F.3d 645, 654 (10th Cir. 1996), indicates that evidence of "extensive third-party *use*" of a mark and federal registrations of that mark in connection with banking and financial services is probative. Accordingly, VMR's motion is DENIED.

### B. Exclude Evidence or Argument Regarding VMR's Products Other than Vapor Couture (dkt. #141)

Next, VMR asks the court to preclude Grand River from presenting evidence, making argument, or referring to goods other than Vapor Couture e-cigarettes. It argues that the evidence is irrelevant, because the question in this case is whether VMR's use of the *accused mark* is likely to cause confusion among consumers, and that to the extent evidence surrounding VMR's other brands has any probative value, that value is outweighed by the danger of unfair prejudice and the likelihood of jury confusion. It also argues that evidence of VMR's relationship with the National Tobacco Company, through which it apparently plans to expand its products into brick-and-mortar retail stores, is not relevant, because it is based on products other than Vapor Couture.

Grand River argues that VMR's request is overly broad, because certain documents and evidence that reference VMR's other products are relevant to Grand River's likelihood of confusion case and will be narrowly tailored as such. Specifically, Grand River points to documents like VMR 00473 (dkt. #59-14), which is titled "Smoke VS. Vapor" and delineates the similarities and difference between cigarettes and e-cigarettes, making reference to "V2 Vapor." This document, Grand River argues, is relevant to show the similarities between cigarettes and e-cigarettes, which is one of the factors pertinent to analyzing likelihood of confusion. Grand River also points out that many of VMR's ads feature logos for V2 Cigs

5

alongside Vapor Couture products, arguing that it should not be precluded from introducing that evidence for limited purposes. Finally, Grand River argues that it should be permitted to introduce evidence of the partnership with National Tobacco Company because VMR's corporate representative testified that V2 Cigs and Vapor Couture are being promoted with roughly equal efforts, and nothing in the record suggests that the partnership is *limited* to V2 Cigs.

The court agrees with Grand River that VMR's motion in limine is too broad as delineated, since some documents referencing both brands might be relevant to the likelihood of confusion analysis. Accordingly, the court will also DENY this motion, without prejudice to VMR making specific objections on relevance grounds at trial consistent with the proposition that Grand River cannot introduce evidence unrelated to the likelihood of confusion between Couture and Vapor Couture, or to the promotion of *Vapor Couture* products.

        C.        **Exclude Evidence of Dan Recio's Work History (dkt. #144)**

The parties have stipulated that neither party will introduce evidence or make arguments regarding Recio's work history in the adult entertainment industry. (Dkt. #172.) Accordingly, this motion in limine is MOOT.

        D.        **Exclude Evidence of Use of COUTURE Mark Before Nov. 1, 2009 (dkt. #165)**

Finally, VMR seeks to exclude evidence of use of the COUTURE mark before the date of Nov. 1, 2009, which is the date Grand River pled in its complaint as the date of first use. The Nov. 1 date is also (1) the same one reflected on the U.S. PTO registration certificate (attached to the complaint as Exhibit A) and (2) consistent with Grand River's response to VMR's interrogatory seeking the date of first use in interstate commerce of the COUTURE mark.

On April 22, 2014, however, Grand River produced additional documents relating to fire-safety testing of the COUTURE cigarettes, submission of the packaging to the FTC, and shipments of accessories into the U.S. -- all activities occurring before the Nov. 1 date. Grand River then similarly supplemented its earlier response to the interrogatory. Arguing that this supplementation comes too late, VMR asks the court to exclude: (1) *any* claim to use before November 1, 2009, as irrelevant based on the allegations in the complaint; (2) the late-produced customs documents (which the court declined to consider on summary judgment because they were late-produced and Grand River had no good excuse); (3) the fire testing documents on the grounds of estoppel, since Grand River represented in other proceedings it has never shipped product into the United States; and (4) the FTC shipment evidence as irrelevant because cigarettes were not included with the packaging.

In response, Grand River first argues that VMR's position would alter longstanding trademark law, which permits an applicant to claim a date of first use later than that which occurred in fact. Second, it argues that the custom documents were only excluded in the context of summary judgment, rather than in the context of trial preparation, the latter of which would require VMR to show that the late production interfered with its *trial* preparations. Third, Grand River argues that the doctrine of judicial estoppel has no application here. Finally, it argues the pre-sales documents are relevant: (1) to show Grand River's ownership and use of the mark in commerce; and (2) to show good faith in Grand River's statements to the U.S. PTO, assuming that VMR's counterclaim of invalidity based on fraud in procurement has been allowed to proceed to trial.

As an overarching matter, it is unclear what Grand River hopes to accomplish by introducing this evidence, given that the court has already entered summary judgment on the issue of whether Grand River has a protectable mark, effectively disposing of VMR's

7

counterclaim for invalidity, along with the need for Grand River to introduce evidence of "use in commerce." Even assuming Grand River still wishes to introduce this evidence, its relevance remains in doubt. Keeping in mind that it is VMR's burden to exclude this evidence wholesale, in order to have time for such an inquiry, as well as to give the parties an opportunity to indicate whether this motion is mooted, the court will RESERVE, subject to specific objections by VMR, with the exception of the judicial estoppel issue, which the court already addressed and which has therefore been mooted.

Entered this 5th day of June, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge